NO. 10-2015

In The

# United States Court of Appeals

For the Fourth Circuit

JOHN BEHRMANN, NANCY BEHRMANN, HIGHBOURNE FOUNDATION,
DELORES F. ANDERSON and THE DODIE ANDERSON FOUNDATION,

Appellants,

v.

NATIONAL HERITAGE FOUNDATION, INC.,

Appellee.

_____

ON PETITION FOR REVIEW OF AN ORDER OF:

The United States District Court
For the Eastern District of Virginia, Alexandria Division
The Honorable Claude M. Hilton
District Court Case No. 1:10cv40

_____

**APPELLANTS' REPLY BRIEF**

_____

Respectfully submitted,

Gregory H. Counts
TYLER, BARTL, RAMSDELL &
COUNTS, P.L.C.
300 N. Washington St., Suite 202
Alexandria, Virginia 22314
Telephone: (703) 549-5000
Facsimile: (703) 549-5011
E-mail: gcounts@tbrclaw.com

Glenn W. Merrick
G.W. MERRICK & ASSOCIATES, LLC
5445 DTC Parkway, Suite 912
Greenwood Village, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
E-mail: gwm@gwmerrick.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………...    iii

SUMMARY OF THE ARGUMENT…………………………………..    1

ARGUMENT                                                          2

    I.    The Bankruptcy Court's Confirmation Order Is Reviewed
        By This Court *De Novo*……………………........................    2

    II.    The Bankruptcy Court Erred in Confirming the Plan……….    4

        A.    NHF Failed To Establish That Claims Against The
            Beneficiaries of the Challenged Provisions Will
            Deplete NHF's Assets………………………………...    7

        B.    The Beneficiaries Of The Challenged Provisions
            Have Not Contributed Any Assets Or Property To
            The Debtor's Reorganization…………………………    9

        C.    The Challenged Provisions Are Not Essential to
            Reorganization………………………………………..    9

        D.    The Impacted Class Has Not Voted to
            Accept the Plan………………………………………    11

        E.    The Plan Does Not Provide a Mechanism to Pay All
            Members of the Affected Class………………………    11

        F.    The Plan Does Not Provide an Opportunity for Those
            Claimants Who Choose Not to Settle to Recover in
            Full……………………………………………………    12

        G.    The Bankruptcy Court Did Not Make a Record of
            Specific Findings to Support Its Conclusions………...    13

    III.    This Appeal Is Not Mooted by
        "Substantial Consummation"………………………………..    14

A.   Appellants Sought and Obtained a Stay Pending Appeal……………………………………………...   15

B.   The Substantial Consummation of the Plan is Immaterial………………………………………   16

C.   The Relief Requested Will Not Affect the Success of the Plan……………………………………………..   16

D.   The Relief Requested Will Not Affect the Rights of Third-Parties……………………………………..   17

CONCLUSION……………………………………………   18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS………………………………………   20

CERTIFICATE OF SERVICE……………………………………   21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Alradigm Communications, Inc. v. FCC (In re Alradigm Communications, Inc.)*, 519 F.3d 640, 657 (7th Cir. 2008)………………   6

*In re Banks*, 299 F.3d 296, 300 (4th Cir. 2002), *rev'd on other grounds*, 130 S.Ct. 1367 (2000)……………………………………………   2, 3, 4

*In re Berwick Black Cattle Co.*, 394 Bankr. 448, 458-59 (Bankr. C.D. Ill. 2008)………………………………………………………...   5

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002), *cert. denied*, 537 U.S. 816 (2002)……………………………………………..   5, 6, 11, 13

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2nd Cir. 2005)…...    6, 7, 9

*In re Frushour*, 433 F.3d 393, 398-99 (4th Cir. 2005)…………………………    3

*In re Investment Co. of the Southwest, Inc.*, 341 Bankr. 298, 308 (10th Cir. B.A.P. 2006)……………………………………………………………    15, 16

*In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001)………………………...    2

*In re MAC Panel Co.*, 2000 Bankr. LEXIS 1694, **23-25 (Bankr. M.D.N.C. 2000)……………………………………………………………    4, 5, 6

*Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694, 701 (4th Cir. 1988), *cert. denied*, 493 U.S. 959 (1989)…………………...    12

*In re Mercedes Homes, Inc.*, 2009 Bankr. LEXIS 4265, **24-38 (Bankr. S.D. Fla. 2009)……………………………………………………………    5

*In re Original IFPC Shareholders, Inc.*, 317 Bankr. 738, 747 (Bankr. N.D. Ill. 2004)……………………………………………………………    5

*In re Paige*, 2009 U.S. App. LEXIS 24131, *35 (10th Cir. 2009)………..    15, 16

*In re Public Serv. Co.*, 963 F.2d 469, 472 (1st Cir. 1992)………………...    16

*Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc. (In re US Airways Group, Inc.)*, 369 F.3d 806, 809 (4th Cir. 2004)………….    14, 15, 16, 18

*In re Transit Group, Inc.*, 286 Bankr. 811, 815 (Bankr. M.D. Fla. 2002)..    6, 7, 11

*United States HHS v. Smithey*, 347 F.3d 109, 116 (4th Cir. 2003)………..    3

*In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994)…………………    15

| **Rules and Statutes** | **Page** |
| --- | --- |
| Fed.R.App.P. 28(1) | 20 |
| Fed.R.App.P. 32(a) | 20 |
| Local Rule 31(c) | 21 |

## SUMMARY OF THE ARGUMENT

In its Opening Brief, Appellee, National Heritage Foundation, Inc. ("NHF"), advances three arguments. First, NHF argues that the appropriate standard of review here is "abuse of discretion" rather than *de novo*, because the Bankruptcy Court's decision to confirm the Debtor's Fourth Amended Plan (the "Plan") was an exercise of the lower court's equitable powers. *See* Brief of Appellee (the "NHF Brief") at pp. 17-19. Second, NHF argues that the Bankruptcy Court did not err in approving the broad release, indemnification and exculpatory provisions (the "Challenged Provisions") contained in Sections 7.19, 7.20 and 7.21 of the Plan because: (i) the Plan was approved by NHF's creditors, (ii) there is a "close connection" between NHF and the released parties, (iii) the Challenged Provisions are "essential" to the implementation of the Plan, and (iv) the confirmed Plan satisfies all holders of allowed claims. *Id.* at pp. 25-34. Lastly, NHF argues that Appellants' arguments on appeal have been "mooted" as a result of the substantial consummation of the Plan. *Id.* at pp. 38-41. None of these arguments by NHF has merit.

First, it is well established that a Bankruptcy Court's decision respecting a matter of law is reviewed by this Court *de novo*. Here, Appellants have challenged the Bankruptcy Court's decision, *as a matter of law*, that the Challenged Provisions comport with the statutory confirmation criteria established by

Congress; accordingly, that decision must be reviewed *de novo*. Second, it is well established that reorganization plans containing non-debtor releases are generally impermissible. Non-debtor releases have been tolerated *only* in the most limited of circumstances, and those circumstances are simply not present in this case. Lastly, Appellants' appeal is not "moot." The substantial consummation of the Plan does not impact Appellants' arguments. Moreover, and notwithstanding "substantial consummation," Section 12.2 of the Plan grants this Court expressly authority to entertain this appeal and grant the relief requested by Appellants.

## **ARGUMENT**

### II.     **The Bankruptcy Court's Confirmation Order Is Reviewed By This Court *De Novo***

NHF's first argument is that the Bankruptcy Court's Confirmation Order was an exercise of that Court's "equitable" power and is therefore reviewed by this Court under the "abuse of discretion" standard rather than *de novo*. *See* NHF Brief at pp. 17-19. This argument is without merit.

It is well established that this Court reviews the decisions of a Bankruptcy Court independent from the District Court. "Where a district court acts in its capacity as a bankruptcy appellate court, we review the bankruptcy court's decision independently." *In re Banks*, 299 F.3d 296, 300 (4th Cir. 2002), *rev'd on other grounds*, 130 S.Ct. 1367 (2010); *citing In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). It is equally well established that the legal conclusions of the

2

Bankruptcy Court are reviewed by this Court *de novo*, whereas the Bankruptcy Court's factual findings are reviewed for clear error. *Id.*

Here, the Bankruptcy Court's Confirmation Order presents a mixed question of both fact and law. As a factual matter, the Bankruptcy Court entered findings of fact based upon the testimony of Janet Ridgely (one of the Houk family members) at the October 15 and 16, 2009 Confirmation Hearing. *See, e.g.*, Jt. Appx. at 1307-08. Specifically, the Bankruptcy Court found, as a factual matter, that the Challenged Provisions had been inserted into the Plan because the Houk family members were concerned that those who had established donor-advised funds ("DAFs"), such as Appellants, might pursue litigation against the family. *Id*. Based upon that factual finding, the Bankruptcy Court determined -- *as a matter of law* -- that the Challenged Provisions satisfied the statutory confirmation criteria established by Congress. Jt. Appx. at 872. The Bankruptcy Court's Confirmation Order is thus a mixture of both factual and legal conclusions.

This Court has previously held that under such circumstances, a "hybrid standard" of review is applied. "[T]hese types of questions are reviewed under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." *In re Frushour*, 433 F.3d 393, 398-99 (4th Cir. 2005), *citing United States HHS v. Smithey*, 347 F.3d 109, 116 (4th Cir. 2003).

The same "hybrid" standard of review applies here. The Bankruptcy Court's factual determinations respecting the propriety of the Challenged Revisions are reviewed by this Court for clear error. *In re Banks*, 299 F.3d 296, 300 (4th Cir. 2002). The Bankruptcy Court's *legal* conclusions, however -- including whether the Challenged Provisions are permissible under prevailing law -- are reviewed by this Court *de novo*. *Id.* The instant appeal focuses on the latter issue; namely, whether the Bankruptcy Court erred in determining that the Challenged Provisions are confirmable *as a matter of law*. Accordingly, the appropriate standard of review here is *de novo*.

## II.    The Bankruptcy Court Erred in Confirming the Plan

NHF's second argument is that the Bankruptcy Court did not err in confirming the Plan despite the inclusion of the Challenged Provisions. NHF Brief at pp. 25-34. NHF urges this Court to adopt the four-prong test for testing non-debtor releases articulated in *In re MAC Panel Co.*, 2000 Bankr. LEXIS 1694, **23-25 (Bankr. M.D.N.C. 2000). In that case, the Bankruptcy Court permitted a third-party release in a reorganization plan where: (i) the plan was overwhelmingly approved, (ii) a "close connection" existed between the claims against the released parties and the claims against the debtor, (iii) the releases were "essential" to the success of the plan, and (iv) the plan provided for payment of substantially all of

the claims affected by the release. *In re Mac Panel*, 2000 Bankr. LEXIS 1694 at ** 23-25.

NHF's sponsorship of *In re Mac Panel Co.* is strained. That older, lower court decision stands in stark contrast to the clearly established prevailing national trend of the appellate courts. Most courts addressing non-debtor, third-party releases in a reorganization plan have looked to the decisions of the Sixth Circuit in *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002)*, cert. denied*, 537 U.S. 816 (2002). *See, e.g., In re Mercedes Homes, Inc.*, 2009 Bankr. LEXIS 4265, ** 24-38 (Bankr. S.D. Fla. 2009); *In re Berwick Black Cattle Co.*, 394 Bankr. 448, 458-59 (Bankr. C.D. Ill. 2008); *In re Original IFPC Shareholders, Inc.*, 317 Bankr. 738, 747 (Bankr. N.D. Ill. 2004).

In contrast to four-factor *Mac Panel* test (articulated by the Bankruptcy Court for the Middle District of North Carolina in 2000), the *Dow Corning* test (articulated by the Sixth Circuit in 2002) is a more thoughtful and thorough seven-factor analysis. 280 F.3d at 658. Notably, NHF has cited no cases that have adopted the *Mac Panel* analysis. Indeed, *Dow Corning* has become the national standard for testing whether a non-debtor release contained in a reorganization plan

is "necessary and fair" and therefore confirmable as a matter of law[1]. NHF has

provided no reason why this Court should buck the prevailing national trend and

adopt the *Mac Panel* analysis when other appellate courts have roundly adopted

*Dow Corning* instead.

NHF's Brief also omits to inform that <u>all</u> of the courts that have reviewed

third-party releases in the context of reorganization plans have admonished that

third-party releases are not to be routinely approved and must be very carefully

scrutinized prior to any confirmation. The Second Circuit, for instance, has

observed that a non-debtor release is a device that lends itself to easy abuse.

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber*

*Network, Inc.)*, 416 F.3d 136, 142 (2nd Cir. 2005). And the Seventh Circuit has

flatly denounced non-debt releases that provide "blanket immunity" for both pre-

petition and post-petition conduct and omissions (such as the Challenged

Provisions contained in the Plan in the present case). *Alradigm Communications,*

*Inc. v. FCC (In re Alradigm Communications, Inc.)*, 519 F.3d 640, 657 (7th Cir.

2008). *See also In re Dow Corning Corp.*, 280 F.3d at 658 (non-debtor releases

are appropriate only in "unusual circumstances"); *In re Transit Group, Inc.*, 286

Bankr. 811, 815 (Bankr. M.D. Fla. 2002) ("Routine inclusion of non-debtor

---

[1]     As demonstrated below, however, even if this Court were to adopt the
outmoded *Mac Panel* test, the result would be the same: the Bankruptcy Court's
confirmation of a reorganization plan containing the Challenged Provisions was
erroneous as a matter of law.

releases in reorganization plans is not appropriate"); *In re Metromedia Fiber Network, Inc.*, 416 F.3d at 142 ("No case has tolerated non-debtor releases absent the finding of circumstances that may be characterized as unique").

In the present case, application of the seven-factor *Dow Corning* criteria compels the conclusion that the Bankruptcy Court's confirmation of the Plan -- without first excising the Challenged Provisions -- was erroneous as a matter of law.

### A.   NHF Failed To Establish That Claims Against The Beneficiaries of the Challenged Provisions Will Deplete NHF's Assets

At the confirmation hearing before the Bankruptcy Court, NHF offered scant evidence that a suit against the beneficiaries of the Challenged Provisions would deplete NHF's resources. *See* NHF Brief at pp. 31-32. NHF points to a remark by the Bankruptcy Judge at the confirmation hearing that those whose claims are disallowed may "re-assert" those claims against NHF's officers and directors, which in turn could lead to NHF incurring "substantial legal costs." *Id.*

The facts introduced at the confirmation hearing do not support NHF's conclusion. At the confirmation hearing, the only witness was Janet Ridgely, one of NHF's officers,[2] who surmised that NHF's "charter documents" provide for

---

[2]     Ms. Ridgely is the daughter of J.T. Houk II (the founder and CEO of NHF) and Miriam Houk (NHF's Chairperson). Jt. Appx. at 1310-11. As an

indemnification by NHF of its directors and officers. Jt. Appx. at 1306. On cross-examination, however, Ms. Ridgely acknowledged that any indemnification obligation owed by NHF is limited by the Georgia Non-Profit Corporation Code. Jt. Appx. at 1336-37. Ms. Ridgely further confessed ignorance respecting whether Georgia law permits indemnification in respect of claims such as those that may be asserted by Appellants (which include allegations of material breaches of fiduciary duty by NHF's directors and officers). *Id.*

At most, the evidence at the confirmation hearing suggests that NHF may one day receive an indemnification request. However, there is no evidence regarding whether NHF's indemnification duty extends to the types of claims that may be asserted against NHF directors and officers. *Id.* Moreover, even if such an indemnification obligation may arise in respect of third-party claims (a proposition for which there is no concrete evidence), the potential depletion of NHF's assets is of only marginal significance in this case. The instant case involves a Plan where all of the reorganization consideration has already been distributed at the Effective Date -- as NHF concedes. *See* NHF Brief at p.39. Thus, any theoretical, future depletion of NHF's assets *cannot* imperil a successful reorganization.

---

officer of NHF, Ms. Ridgely is one of the beneficiaries of the Challenged Provisions.

**B.    The Beneficiaries Of The Challenged Provisions Have Not Contributed Any Assets Or Property To The Debtor's Reorganization**

At the confirmation hearing conducted before the Bankruptcy Court, NHF presented no evidence whatsoever respecting what, if anything, the non-debtor beneficiaries of the Challenged Provisions (principally the Houk family) have contributed in respect of the NHF reorganization. Without such evidence, courts have categorically rejected reorganization plans that contain provisions similar to the Challenge Provisions here. *See, e.g., Metromedia Fiber Network*, 416 F.3d at 145.[3]

**C.    The Challenged Provisions Are Not Essential to Reorganization**

The Challenged Provisions are not necessary to a successful reorganization of NHF. *See* NHF Brief at pp. 30-32. NHF notes speculative testimony by Ms. Ridgely to the effect that some unidentified NHF's officers and directors *may* be unwilling to continue working for NHF in the absence of the release provisions. *Id.* at p. 31. NHF also points to the testimony of Ms. Ridgely that retaining the current officers and directors is "essential" to the success of NHF. *Id.*

---

[3]    It should not be overlooked that the Houk family has at all times dominated NHF's board of directors, and the Plan permits them to retain their positions notwithstanding: (i) the circumstances that induced NHF's bankruptcy filing, (ii) the weighty allegations of fraud, dishonesty and fiduciary duty breaches asserted against them, and (iii) their lack of any contribution to the NHF reorganization. Jt. Appx. at 628.

For a host of reasons NHF's effort falls well short. First, the testimony of Ms. Ridgely noted by NHF consists of a two-word, self-serving answer to an invitation for opinion. "Do _you_ believe that the services of these existing officers and directors are essential to the success of the reorganized debtor? I do." Jt. Appx. at 1306. Second, what Ms. Ridgely (a beneficiary of the Challenged Provisions) may "believe" is collateral at best. Significantly, she was not asked for any factual basis for her "belief." _Id._ Third, and most importantly, Ms. Ridgely offered her opinion as to what is essential to "the success of the reorganized debtor." _Id._ Ms. Ridgely was _not_ asked whether the services of her family members are necessary to a "successful reorganization." Manifestly, the answer to the latter question is "no" (because the distributions of all of the reorganization consideration occurred upon the Effective Date). As noted above, the success of NHF's reorganization does not require any future operations by NHF. Jt. Appx. at 623. And, finally, on cross-examination Ms. Ridgely expressly conceded that no NHF officer or director (including the members of the Houk family) has ever stated that he or she would decline to serve in that capacity unless shielded by the Challenged Provisions. Jt. Appx. at 1603.

Accordingly, based upon the evidence before the Bankruptcy Court, there is no basis for concluding that the Challenged Provisions are necessary to a successful reorganization of NHF (one that has already occurred at the writing of

this brief). *In re Transit Group*, 286 Bankr. at 819-20 (third-party releases rejected where plan proponent failed to demonstrate their necessity to the debtor's reorganization).

### D.    The Impacted Class Has Not Voted to Accept the Plan

Because Appellants' claims were classified as "unimpaired" under the Plan, Appellants (and all other members of the Class III(C) -- the class of contributors to donor advised funds) were stripped of any opportunity to vote on the Plan. *See* NHF Brief at p. 28.  In response, NHF professes only that it was unnecessary to solicit the votes of the holders of unimpaired claims in pursuing confirmation of the Plan. *Id.*  But NHF misses the point.  It remains undisputed that Class III(C) -- the class that is adversely affected by the Challenged Provisions -- was categorically denuded of any opportunity to vote on them.  *Id.*  Under such circumstances, a third-party release provision is categorically not confirmable. *See Dow Corning*, 280 F.3d at 658.

### E.    The Plan Does Not Provide a Mechanism to Pay All Members of the Affected Class

The Plan provides for the payment of Appellants' claim *in the event it is allowed*.  *See* NHF Brief at pp. 32-34.  But even prior to the hearing on confirmation NHF: (i) objected to Appellants' claim -- and the claims of all other Class III(C) contributors to donor advised funds, and (ii) sought to strip these claimants of the ability to pursue responsible non-debtors in any other forum.  *Id.*

11

Accordingly, the suggestion that the Plan provides for payment in full is erroneous. Participation in Plan distributions (which is not fully compensation because the Plan does not provide for payment of full interest and attorney's fees) depends upon Appellants' success in pursuing allowance of their claim in NHF's bankruptcy proceedings.[4]   And in the event that Appellants' claim is disallowed by the Bankruptcy Court, Appellants are robbed by the Plan of the right to seek redress against non-debtor parties.

> ### F.     The Plan Does Not Provide an Opportunity for Those Claimants Who Choose Not to Settle to Recover in Full

The Plan does not contain any proposed "settlement."  NHF concedes. This is noteworthy because in those cases where non-debtor releases in reorganization plans have been sustained, the availability of a settlement mechanism affording opportunity for affected claimants to settle their claims has been pivotal.  *See, e.g., Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694, 701 (4th Cir. 1988), *cert. denied*, 493 U.S. 959 (1989).

---

[4]       Under no circumstance will Appellants be fully paid even if their claim is allowed.  This follows because the Plan provides only for partial recovery. It does not provide for recovery of the full rate of interest, punitive damages or attorneys' fees – all of which Appellants are entitled to recover against responsible non-debtors under applicably non-bankruptcy law in a court of general jurisdiction.

### G.   The Bankruptcy Court Did Not Make a Record of Specific Findings to Support Its Conclusions

In its Confirmation Order, the Bankruptcy Court did not make any specific findings that the Challenged Provisions satisfy the *Dow Corning* criteria.  To the contrary, the "findings" in the Confirmation Order (which were authored by NHF's counsel) simply recite that the third-party releases are "appropriate given the Debtor's unique circumstances," "essential" and "integral" to the Plan, "important to the overall objectives of the plan," and "confer a material benefit" on the estate. Jt. Appx. at 886-87.  These conclusory remarks are not supported by any evidence adduced at the confirmation hearing.  Rather, the Bankruptcy Judge executed a proposed Confirmation Order produced overnight by NHF's counsel.  *See Dow Corning*, 280 F.3d at 658.

Of course, NHF declares that it produced "ample evidence" of the necessity of the Challenged Provisions.  *See* NHF Brief at pp. 30-32.  Without repeating the discussion above, the record below simply does not support this assertion. Moreover, NHF again fires wide of the mark.  Independent of the sufficiency of evidence produced at a confirmation hearing, the Bankruptcy Judge is required to make specific findings under *Dow Corning* that establish that the Challenged Provisions are essential to successful reorganization.  280 F.3d at 658.  The lower court did not engage in meaningful factual inquiry.  Rather, it accepted bald

13

conclusions in the form of Order submitted by NHF – all without recitation to any factual support.

It follows that an even-handed application of the *Dow Corning* criteria requires excision from the Plan of the Challenged Provisions.  All that remains is to address NHF's effort to block appellate review by urging the "equitable mootness" doctrine.

### III.  This Appeal Is Not Mooted by "Substantial Consummation"

NHF seeks to foreclose appellate review by urging that this appeal has been "mooted" by "substantial consummation" of the Plan.  *See* NHF Brief at pp. 38-41. NHF relies upon the doctrine of "equitable mootness" to support its invitation to this Court to forsake its fundamental appellate jurisdiction.  *Id.* at p. 38.  Once again, and for a host of reasons, NHF's invitation must be spurned.

In addressing the doctrine of "equitable mootness," the Fourth Circuit balances four factors.  These are: (1) whether the appellant sought and obtained a stay, (2) whether the reorganization plan has been substantially consummated, (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan, and (4) the extent to which the relief requested on appeal would affect the interests of third-parties.  *Retired Pilots Ass'n of US Airways, Inc. v. US Airways Group, Inc. (In re US Airways Group, Inc.)*, 369 F.3d 806, 809 (4th

Cir. 2004). In the present case, all of these factors counsel strongly against a finding of equitable mootness.

### A. Appellants Sought and Obtained a Stay Pending Appeal

On November 13, 2009, Appellants moved for a stay pending appeal. Jt. Appx. at 1061. On December 16, 2009, the Bankruptcy Court granted the requested stay. Aplt. Appx. at 1. The lower court's Order stayed that portion of the Confirmation Order (the Challenged Provisions) that bar Appellants from filing suit against any of NHF's officers and directors so as not to run the risk of a statute of limitations defense. Aplt. Appx. at 34-35. Accordingly, Appellants sought and obtained a stay pending appeal.

Moreover, even if Appellants had not obtained a stay pending appeal (which they did), the failure to obtain a stay is insufficient to warrant a dismissal on equitable mootness grounds. *In re Investment Co. of the Southwest, Inc.*, 341 Bankr. 298, 308 (10th Cir. B.A.P. 2006). Rather, the failure to obtain a stay is at most "only tangential" to the application of equitable mootness doctrine. *In re Paige*, 2009 U.S. App. LEXIS 24131, *35 (10th Cir. 2009); *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994).

## B.    The Substantial Consummation of the Plan is Immaterial

At the outset, it must be observed that substantial consummation "by itself [is] insufficient to moot an appeal from an order of confirmation." *In re Investment Co. of the Southwest, Inc.*, 341 Bankr. at 308; *accord, In re Paige*, 2009 U.S. App. LEXIS 24131, \*\*37-38 (substantial consummation "is not dispositive of our analysis of whether the doctrine of equitable mootness should prevent the court from reaching the merits of the appeal"); *In re Public Service Co.*, 963 F.2d 469, 472 (1st Cir. 1992) (same).

## C.    The Relief Requested Will Not Affect the Success of the Plan

The third factor in assessing "equitable mootness" is whether the relief requested on appeal will adversely impact the successful reorganization of the debtor. *In re US Airways*, 369 F.3d at 809.  In the present case, the relief requested will *not* adversely impact the successful reorganization *or* the successful implementation of the Plan.

On appeal, Appellants challenge only the non-debtor release, indemnification and exculpatory provisions contained in the Plan which prevent the pursuit of claims against non-debtors.  Appellants do not challenge the balance of the Plan.  *See* Appellants' Opening Brief at pp. 2, 26; *see also* Jt. Appx. at 1061. Importantly, the Challenged Provisions are expressly severable from the balance of

16

the Plan, and excising the Challenged Provisions does not affect the implementation of the balance of the Plan.  Section 12.2 of the Plan (*see* Jt. Appx. at 635) expressly provides:

> 12.2  **<u>Severability</u>**.    Should any provision in this Plan be determined to be unenforceable, that determination will in no way limit or affect the enforceability and operative effect of any other provision in this Plan.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Thus, by the express terms of the Plan the Challenged Provisions may be declared invalid and unenforceable, and severed from the balance of the Plan, all without affecting the implementation of the balance of the Plan, its successful implementation or the distributions that have been made in reliance upon its terms. Reversal on appeal would have no impact on the Plan other than reformation consistent with its express terms to remove the unlawful Challenged Provisions.

## D.    The Relief Requested Will Not Affect the Rights of Third-Parties

The final factor in the Fourth Circuit's "equitable mootness" calculus also weighs against a conclusion that this appeal is equitably moot.  Appellants *do not* seek to unwind any transactions that have been undertaken in reliance upon

17

accomplished under the Plan, and the relief requested thus *does not* result in any harm to any third-parties who have relied upon confirmation of the Plan.[5]

An appeal should not be dismissed as "equitably moot" absent convincing evidence that material injury will result from unwinding transactions involving innocent third-parties not before the Court. *In re US Airways*, 369 F.3d at 809. In this case, no transactions will be rescinded or unwound; each transaction remains complete and inviolate. Instead, by virtue of the severability clause contained in Section 12.2 of the Plan (Jt. Appx. at 635), the Challenged Provisions may be removed from the Plan without disturbing the rights of any third parties that were not before the Bankruptcy Court.

Accordingly, an even-handed weighing of the "equitable mootness" factors identified in *US Airways* requires that this Court reject NHF's invitation to forsake its fundamental appellate jurisdiction.

## CONCLUSION

For all of the foregoing reasons, Appellants respectfully urge this Court to reverse the Bankruptcy Court's Confirmation Order and remand the District Court's Order affirming. This Court should reverse and remand to the Bankruptcy Court with instructions that: (i) NHF's Fourth Amended Plan may be confirmed

---

[5]    Of course, the beneficiaries of the Challenged Provisions (NHF's directors and officers) are fully cognizant of the severability provision contained in Section 12.2 of the Plan. Jt. Appx. at 635.

with the release, injunction and exculpation provisions (Sections 7.19, 7.20 and 7.21) excised, or (ii) confirmation of NHF's Fourth Amended Plan must be otherwise denied.

Dated this 30th day of December, 2010.

Respectfully submitted,


By: s/ Glenn W. Merrick
Glenn W. Merrick
G.W. MERRICK & ASSOCIATES, LLC
5445 DTC Parkway, Suite 912
Greenwood Village, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
E-mail: gwm@gwmerrick.com

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

1.     The undersigned certifies that this Brief complies with the type-volume limitations of Fed.R.App. P. 28(1)(e)(2) or 32(a)(7)(B) because:

☒     this Brief contains 3,871 words, excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(ii), *or*

☐     this Brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.     The undersigned certifies that this Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

☒     this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-point Times New Roman font; *or*

☐     this Brief has been prepared in a monospaced typeface using ___ with ___.

s/ Glenn W. Merrick
Glenn W. Merrick

Attorney for Appellants

20

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 30th day of December, 2010, a true and accurate copy of the foregoing APPELLANTS' REPLY BRIEF was served upon counsel for Appellees electronically pursuant to Local Rule 31(c) by using this Court's electronic CM/ECF system and by designating electronic service to the counsel of record for Appellees as follows:

> Erika Lynn Morabito, Esq.
> Patton Boggs, LLP
> 2550 M Street NW
> Washington, DC 20037

> s/ Glenn W. Merrick
> Glenn W. Merrick

> Attorney for Appellants

21